(121 App. Div. 510.)

## BOSOIAN v. HUBBARD et al.

(Supreme Court, Appellate Division, Second Department.   October 11, 1907.)

1. APPEAL—REVIEW—EVIDENCE.

   Where a verdict was directed for defendants, all contested facts must be treated as established in plaintiff's favor on appeal.

2. CONTRACTS—MODIFICATION—IMPLIED ASSENT—SILENCE.

   Plaintiff, an uneducated Armenian, was engaged in certain speculative transactions in cotton through defendants, his brokers, under a parol contract that his account would not be closed out without calling him for more margin.   *Held* that, under the rule requiring mutuality of agreement to the modification of a contract, such agreement was not modified by plaintiff's mere silence after receiving various memoranda of transactions made by defendants for his account on a printed form, at the foot of which appeared a clause, which plaintiff had never read, that it was understood that on all margin business defendants reserved the right to close transactions when margins were running out, without further notice, etc.

Appeal from Trial Term, Queens County.

Action by John Bosoian against Samuel T. Hubbard and others, doing business as Hubbard Bros. & Co.   From a judgment on a directed verdict in favor of defendants, plaintiff appeals.   Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Nathan F. Giffin (George F. Maguire, on the brief), for appellant.
Eugene D. Hawkins, for respondents.

WOODWARD, J.   This is an action against the members of a partnership doing business as cotton brokers to recover damages for closing out, without notice to the plaintiff, certain speculative accounts which they were carrying for him pursuant to a contract the terms of which are in dispute; the plaintiff claiming that it was oral and the defendants that it was partly oral and partly written.   For the purposes of this appeal, the verdict for the defendants having been directed by the court, all contested facts must be treated as established in favor of the plaintiff.   It appears then that in January, 1904, the plaintiff had two conversations with one of the defendants at their offices, during which he was told what the margin and rate of brokerage would be, and was assured by the defendant Dillingham that the defendants would not close out his account without calling on him for more margin. Thereupon, and in pursuance of this understanding, the plaintiff transferred his account from another broker, and began doing a marginal business in cotton through the defendants, spending most of his time at their office, eating his luncheons and having his address there. When during business hours he was not there, he was in the Cotton Exchange gallery, three minutes distant.   After each purchase or sale by the plaintiff of a contract for the future delivery of cotton,

one of the defendants' clerks would hand the plaintiff a written memorandum showing the amount, price, and time of the particular cotton bought or sold.   These memoranda were made upon a printed form, at the foot of which, among other printed matter, appeared the following:

"It is further understood that on all marginal business the right is reserved to close transactions when margins are running out, without further notice, and to settle contracts in accordance with rules and customs of Exchange where order is executed.   Hubbard Bros. & Co."

The plaintiff is an Armenian, uneducated, reads with difficulty, and never read the printed matter on these memorandum slips.   On Saturday, June 11, 1904, at about 10:30 in the forenoon, the plaintiff, while in the defendants' office, told the margin clerk that he wished to buy 200 bales of July cotton.   The clerk, saying, "Let me see if you have enough margin," figured the margin, said, "Yes; you can buy it," and ordered another clerk to buy it for the plaintiff.   A few minutes later the plaintiff was handed a memorandum, Exhibit 9, reading: "10:36 Mr. Bosoian bought two July 12:20 H. B."   At that time the ticker gave the price of cotton as 12.07, but, on calling the clerk's attention to the large difference in price against him, the plaintiff was told that it was a mistake.   He delared his intention to go next door to the gallery of the Cotton Exchange, and asked the clerk to let him know if it became necessary to put up more margin, and the clerk said, "All right."   At about 15 minutes before 12, while in the gallery of the Exchange, the plaintiff heard 12.41 offered for July cotton, went back to defendants' office to sell at the considerable profit then appearing, and found that he had been sold out at 12.22.   The clerk, in explanation, told him that they thought cotton was going down, and "Mr. Dillingham didn't let me send to you over on the Cotton Exchange gallery. He said to me, 'Close him out,' and so I closed you out."   Much of the foregoing was controverted by the defendants' witnesses, but this only raised a question of fact for the jury.

At the close of all the evidence, the learned trial court directed a verdict for the defendant on the ground that the contract was modified by the plaintiff's "silent acquiescence, despite the repeated notices of that modification"; that is, the paragraph above quoted, which purported to reserve to the defendants the right to close out marginal transactions without notice.   An exception was duly taken to the dismissal of the complaint.   No authority has been cited in support of this theory of modification, nor have I been able to find any.   If it is sound, a party to a contract may modify it by giving repeated notices of his "modification" to the other party, provided the latter silently receives them; they being printed on slips carrying brief written memoranda made necessary by the nature of the contract.   This cannot be true, for there is no mutuality of agreement which is as indispensable to the modification as to the making of a contract.   The waiver of a provision of a contract is in effect a modification of it, and the Court of Appeals has held that a waiver cannot be inferred from mere silence. Titus v. Glens Falls Ins. Co., 81 N. Y. 410, 418.

No modification was made out in the case at bar.   The case should

have been submitted to the jury, and the judgment should therefore be reversed, and a new trial granted.

Judgment and order reversed and new trial granted, costs to abide the event. All concur.